IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

            **v.**               **Criminal No.** 20-374 (FAB)

YAVIER MOJICA-RAMOS,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court is defendant Yavier Mojica-Ramos ("Mojica")'s motion to compel specific performance of the applicable plea agreement. (Docket No. 65.) For the reasons set forth below, Mojica's motion to compel is **DENIED.**

**I.   Background**

    The facts are not in dispute. On November 4, 2020, a grand jury charged Mojica with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. section 922(g)(1) (count one), and for possessing a machine gun in violation of 18 U.S.C. section 922(o) (count two). (Docket No. 1.) The United States and Mojica entered into a plea agreement on August 5, 2021. (Docket No. 40.)

## A. The Plea Agreement

Mojica pled guilty to possession of a machine gun pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). (Docket No. 42.) In exchange for his guilty plea, the United States agreed "to dismiss the remaining counts [*sic*] of the Indictment" (*i.e.* the felon in possession of a firearm count). (Docket No. 40 at p. 7.)

The maximum penalty for count two is a term of ten years imprisonment, a fine not to exceed $250,000.00, and a supervised release term not to exceed three years. Id. at p. 4. The parties agreed, however, to request a sentence "within the applicable Guidelines range at a total offense level of 19 when combined with the criminal history category determined by the Court." Id. at p. 4. The United States Probation Office asserts that Mojica is subject to a "criminal history category of III." (Docket No. 56 at p. 13.) Based on this offense level and criminal history category, the "guideline imprisonment range is [from] 37 months to 46 months." Id. at p. 22.

Mojica recommends a "reasonable sentence that is not harsher than necessary." (Docket No. 63.) His sentencing memorandum does not, however, seek a specific term of imprisonment. Id. The United States requests that the Court "impose a sentence of 46 months, which would be the upper end of the applicable

sentencing range." (Docket No. 55 at p. 1.) According to the United States, extractions from Mojica's cellular phone demonstrate that he "continue[s] to embrace firearms, narcotics, and violent behavior." Id. at p. 3. These extractions include 255 images of various firearms; rounds of ammunition; a substance resembling marijuana packaged inside bulk, individual, and air-sealed bags; United States currency inside a Ziplock bag; pills inside unmarked containers; electronic scales and other drug paraphernalia. (Docket No. 55, Ex. 1.) Law enforcement officers also recovered footage of Mojica "brandishing an assault-style rife by repeatedly pointing the barrel at the individual who is recording the video." (Docket No. 55 at p. 6.) The United States contends that Mojica "has an interest in, and likely participates in, other criminal behavior beyond the" possession of a machinegun. Id. at p. 6.

Mojica argues that the United States breached the plea agreement by disclosing the cellular phone extractions to the Court. (Docket No. 65.) According to Mojica, this submission constitutes a "substantive request for an upward variance." Id. at p. 2. Essentially, Mojica avers that the United States' sentencing memo is a tacit violation of the plea agreement.

Criminal No. 20-374(FAB)                                          4

## II.  Legal Standard

Plea agreements are governed "by general principles of contract law." United States v Frazier, 340 F.3d 5, 11 (1st Cir. 2003) (citation and quotation omitted); United States v. Goodman, 971 F.3d 16, 19-20 (1st Cir. 2020) ("A plea agreement is, after all, a contract under which both parties give and receive consideration") (citation and quotation omitted).  Because defendants forego fundamental rights by pleading guilty, courts hold the United States to "the most meticulous standards of both promise and performance." United States v. Clark, 55 F.3d 9, 12 (1st Cir 1995) (citation and quotation omitted); see Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").  Failure to comply with the plea agreement constitutes a breach, "whether done deliberately or not." United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004); Frazier, 340 F.3d at 11 ("[Even] an unintended breach [of the plea agreement] is, nevertheless, still a breach.").  The United States need not, however, render an "enthusiastic" sentencing recommendation. United States v. Riggs, 347 F.3d 17, 19 (1st Cir. 2003).

Courts engage in a fact-specific inquiry to determine whether a specific sentencing recommendation comports with the plea agreement. See United States v. Montañez-Quiñones, 911 F.3d 59, 64 (1st Cir. 2018) ("No magic formula exists for a prosecutor to comply with the agreed-upon sentence recommendation.") (citation and quotation marks omitted); United States v. Almonte-Núñez, 771 F.3d 84, 91 (1st Cir. 2014) ("We consider the totality of the circumstances in determining whether a prosecutor engaged in impermissible tactics."). Tacit disregard for a plea agreement may constitute a breach. See Clark, 55 F.3d at 9 (noting that implicit violations of plea agreements may occur without "formal opposition") (citing United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992) ("While it can be argued that the government stopped short of explicitly repudiating the agreement, Santobello prohibits not only 'explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.")). For instance, setting forth "material reservations about the agreement" is indicative of a breach. Canada, 960 F.2d at 269; United States v. Miranda-Martínez, 790 F.3d 270, 275 (1st Cir. 2015) ([When] a prosecutor . . . gratuitously offers added detail garbed in implicit advocacy, a court might well find that the prosecutor is actually seeking a result in a manner that breaches the agreement."); United States

v. Irizarry-Rosario, 903 F.3d 151, 154 (1st Cir. 2018) (holding
that the United States cannot "lament the plea agreement's terms
or otherwise suggest it would seek a different sentence if free to
do so."); United States v. Warren, 8 F.4th 444, 447 (6th Cir.
2021) (holding that the United States breached the plea agreement
"by telling the court that it would not have entered the agreement
had it known that [the defendant's] felonious assault convictions
involved shootings").

## III. Discussion

Mojica sets forth three arguments in support of his motion
for specific performance.  First, Mojica maintains that evidence
described in the United States' sentencing memorandum is a Trojan
horse, a thinly veiled request for an upward variance housed
inside a disingenuous recommendation. (Docket No. 65 at p. 1.)
Second, he asserts that the United States failed to authenticate
the images and video extracted from his cellular phone.  Id. at
p. 2.  Third, referring to Mojica's crime of conviction as
"exceptional" and "alarming" is an attempt to circumvent the plea
agreement.  (Docket No. 65 at p. 2.)

### A. The Cellular Phone Extractions

The language set forth in the plea agreement controls the
Court's analysis.  United States v. Luján, 324 F.3d 27, 33 (1st
Cir. 2003) ("We start with the language of the [plea] agreement,

interpreting it under normal contract-law principles.") (citation omitted).   The plea agreement requires the United States to recommend a sentence within the applicable guideline range. (Docket No. 40 at pp. 3—4.)   This is precisely what the United States did.   The sentencing memorandum states unequivocally that "the nature of offense and the characteristic of [the] Defendant warrant a sentence of 46 months."   Id. at p. 13; see United States v. Davis, 923 F.3d 228, 239 (1st Cir. 2019) (holding that the United States did not breach the plea agreement because it "repeatedly recommended – in its sentencing memorandum and at the sentencing hearing – the 'severe' 240 month sentence it was entitled to recommend under the terms of the plea agreement and never argued for a different sentence").   Accordingly, the dispositive question is whether the cellular phone extractions belie this recommendation.

Mojica posits that the United States "had no such obligation to provide its unvetted exhibits."   (Docket No. 72 at p. 1.)   This statement is incorrect.   The United States complied with its "solemn obligation to provide relevant information to the sentencing court."   United States v. Ubiles-Rosario, 867 F.3d 277, 283 (1st Cir. 2017); United States v. Berzon, 941 F.2d 8, 21 (1st Cir. 1991) ("Generally, there is no limitation on the information which a court may consider in sentencing other than that the

information bear sufficient indicia of reliability to support its
probable accuracy."); Gonczy, 357 F.3d at 53 ("The government's
review of the facts of the case and of Gonczy's character cannot
constitute a breach of the plea agreement as they were relevant to
the court's imposition of sentence; no limitation can be placed by
agreement or otherwise, on this information."); United States v.
McCloskey-Díaz, 925 F. Supp. 2d 204, 209-10 (D.P.R. 2013) (holding
that the United States fulfilled "its duty to provide the Court
with all relevant sentencing information") (Besosa, J.).

In fact, 18 U.S.C. section 3661 ("section 3661") provides
that:

> No limitation shall be placed on the information
> concerning the background, character, and conduct of a
> person convicted of an offense which a court of the
> United States may receive and consider for the purpose
> of imposing an appropriate sentence.

18 U.S.C. § 3661.  "The intent of Congress" in enacting section
3661 "was clearly to leave wide open the information at
sentencing."  United States v. Viloria-Sepúlveda, 921 F.3d 5, 9
(1st Cir. 2019) (citation and quotation omitted).  The photos and
video extracted from Mojica's cellular phone are relevant to the
factors set forth in 18 U.S.C. section 3553(a).  Mojica, a felon
with a prior firearm conviction, is portrayed in the extracted
video as a cartoon panda while waiving an assault weapon. (Docket
No. 55, Ex. 3.)  An affinity for the unlawful possession of

firearms and controlled substances suggests a lack of respect for
the law and a threat to public safety.  See United States v. Vick,
852 F. App'x 546, 547 (1st Cir. 2021) (affirming a sentence based,
in part, on the defendant's "obsession" with firearms); cf.
Irizarry-Rosario, 903 F.3d at 155 ("It requires little imagination
to understand why a defendant's accumulation of a small arsenal
might counsel in favor of a higher sentence on a drug distribution
charge.").

      The Court is cognizant that the duty to disclose pertinent
information may, in certain circumstances, undermine obligations
set forth in the applicable plea agreement.  See United States v.
Davis, 923 F.3d at 237 (recognizing "a tension between the general
principle that the government has a duty to provide to the court
reliable information relevant to sentencing and the fact that
'certain factual omissions, helpful to the defendant, may be an
implicit part of the bargain in a plea agreement") (citation and
quotation omitted).  The United States' sentencing memorandum is,
however, consistent with the plea agreement.  The plea agreement
permits the United States to advocate for a sentence higher than
the recommendation requested by Mojica.  The United States may
adduce evidence in support of its sentencing recommendation.  See
Montañez-Quiñones, 911 F.3d at 65 ("Thus, the prosecutor had a
right (indeed, a duty) to explain to the court why the higher

sentence that it was urging was more appropriate."); Irizarry-
Rosario, 903 F.3d at 155 ("The government was entitled to explain
that recommendation to the sentencing judge, and did so briefly
and interspersed with reaffirmations of the sixty-month sentencing
recommendation for Count I.  This was not a breach."); Ubiles-
Rosario, 867 F.3d at 287 ("Having unequivocally and repeatedly
stated that it was recommending a sentence of 300 months, the
government was free to offer reasons supporting its
recommendation.") (citation and quotation omitted).  The United
States need not "sugarcoat the facts." Almonte-Núñez, 711 F.3d at
91.

    The First Circuit Court of Appeal's decision in United States
v. Saxena, 229 F.3d 1 (1st Cir. 2000), is illustrative.  The
defendant in Saxena pled guilty to, *inter alia*, nine counts of
mail fraud and seventeen counts of selling unregistered
securities.  Id. at 4.  The plea agreement required the United
States to request a three-level reduction for acceptance of
responsibility.  Id.  After the change of plea hearing, but before
the imposition of sentence, the defendant "[solicited]
subscriptions for a newsletter on the Internet and assur[ed]
potential investors that [he] would guide them to astronomical
profits."  Id.  The United States provided this information to the
probation officer, who included details of the online solicitation

in the Presentence Investigation Report.  Id. at 5.  The defendant
argued that the United States breached the plea agreement by
furnishing this information to the Court.  Id.

The Saxena court held that the United States complied with
the plea agreement, rejecting the defendant's "charge that the
prosecutor . . . played fast and loose."  Id. at 6.  The sentence
survived the defendant's appeal for two reasons.  First, the United
States "approached the matter cautiously," acknowledging the
"limited extent of [its] knowledge."  Id. at 7.  Second, and "most
important," the United States "resolutely stood by the bottom-line
recommendation that [it] had committed to make, urging a 24-month
sentence even after the court had indicated that it would not award
an acceptance-of-responsibility adjustment."  Id.

Like the prosecution in Saxena, the United States here
obtained relevant information after entering into the plea
agreement, but before the sentencing hearing.  (Docket No. 55.)
Mojica would have the United States withhold this information from
the Court in violation of its duty to disclose relevant
information.  The United States presented this evidence, however,
in a manner consistent with the plea agreement.  See Rivera-
Rodríguez, 489 F.3d at 58 (holding that the United States did not
breach the plea agreement by informing the Court of drug
"quantities beyond the amount stipulated to in the plea

agreement"); Ubiles-Rosario, 867 F.3d at 287 ("The government did not breach the plea agreement by identifying evidence at the sentencing hearing that, in its view, supported the 300-month sentence that it was requesting the district court to impose."). Significantly, the United States remains steadfast in its endorsement of a sentence at the high end of the applicable guideline range.   Accordingly, Mojica's argument that providing details of the cellular phone extraction to the Court is unavailing.

**B. Reliability of the Cellular Phone Extractions**

The motion to compel specific performance of the plea agreement admonishes the United States for "[failing] to vet or authenticate the images its technicians purportedly found on Mr. Mojica's phone."  (Docket No. 65 at p. 2.)  This Court possesses "considerable leeway in deciding whether particular evidence is reliable enough for sentencing purposes."  United States v. Padilla-Galarza, 990 F.3d 19, 25 (1st Cir. 2021).  The Federal Rules of Evidence do not apply in the sentencing context.  United States v. Rondón-García, 886 F.3d 14, 20-21 (1st Cir. 2018). Reliance on charged and uncharged conduct is appropriate if "proven by a preponderance of the evidence."  United States v. González, 857 F.3d 46, 59 (1st Cir. 2017).  Because the United States has

no obligation to authenticate the cellular phone extraction, this
argument is meritless.

### C. Reference to the Exceptional Nature of this Case

Mojica contends that reference to the "exceptional" nature
of this case is a violation of the plea agreement.  (Docket No. 65
at p. 3.)  He faults the United States for citing the 2019 Federal
Bureau of Investigation Crime Report, a newspaper article, and
other sources for the proposition that "firearm violence in Puerto
Rico is a grave problem."  (Docket No. 55 at pp. 9—11.) The First
Circuit Court of Appeals has held, however, that "a sentencing
court may consider the pervasiveness of [a particular] type of
crime in the relevant community."  United States v. Narváez-Soto,
773 F.3d 282, 286 (1st Cir. 2014).  And based on this Court's
"reasoned determination, predicated on its experience . . . gun-
related violent crime [] is an acute problem in Puerto Rico."  Id.

The United States and Mojica are permitted to present their
respective views regarding the offense of conviction at the
sentencing hearing.  See Montañez-Quiñones, 911 F.3d at 65 ("The
defendant's attempt to find a breach of the plea agreement by the
prosecutor's unflattering narrative about the heinous nature of
the defendant's crime is unpersuasive.").  Because the United
States has complied with the terms of the plea agreement, there is
no basis for the Court to order any specific performance.  Nor is

there any legitimate basis for the undersigned judge to recuse himself.

**IV. Conclusion**

   For the reasons set forth above, Mojica's motion for specific performance is **DENIED.**  (Docket No. 65.)  The sentencing hearing is set for **February 8, 2022 at 10:15 AM** before the undersigned in Courtroom 2.


        **IT IS SO ORDERED.**

   San Juan, Puerto Rico, February 8, 2022.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE